This is No. 2010-1553, Walker Digital, LL. 3 against Capital One. Mr. Dorman. Thank you, Your Honor. May it please the Court. I stand before you this morning requesting that the Court reverse a summary judgment of non-infringement determination by the lower court and remand the case. In any other appeal of this type on these issues, the first thing that I would speak to you about would I demonstrate the evidence below and how it showed that a reasonable jury could find in my client's favor and that summary judgment of non-infringement was improvidently granted. I will still do that, but the briefing on appeal here has exposed a more fundamental dispute that I frankly did not know existed before the briefing. I had thought the lower court's claim construction with respect to the phrase calculating a price was agreed, was understood, that both sides understood what the court said. Apparently not so. So the first issue I think before this Court, and I had no idea when I started the briefing on this case, is the following. Whether the words actually used by a court to construe claim language constitute the claim construction for summary judgment infringement analysis purposes. Now, of course, you would say, I suspect, and Walker agrees, that of course it does. But Capital One apparently says no. Fairly read, Capital One's appellate brief says, although the court didn't say so in its mark and ruling, and although we never proposed this meaning below, the court intended the phrase computing a price to mean, quote, generating a price for the first time, and that is the claim construction for the phrase calculating a price. If you read their brief, I believe that fairly is what they are saying before you. So for Capital One, the relevant claim construction at issue is not what the lower court actually said. It's what the lower court supposedly meant when it said what it said. Now let's stop and reflect a moment. What Capital One is proposing, if embraced, is very bad public policy. If this court cannot rely on what lower courts say is the legally correct construction of a claim term, how can this court reliably discharge its appellate court duties of review? Now, why is Capital One proposing such a thing if it's bad policy? Of course, the claim itself uses the word calculating. Correct. That's correct. We can't ignore that. We can't ignore that. But what we are talking about is that what is now before the court is we're past the word calculating. The court has construed the phrase calculator calculating a price to mean computing. But a claim construction doesn't mean that you ignore the words of the claim. No, of course not. So the claim construction is just there to provide some understanding of the words of the claim. The words of the claim continue to be part of the mix, do they not? Well, I have understood that when a court construes claim language, in this case calculating a price, to be computing a price, for the purpose then, that will then be the jury instruction as to what that phrase means, that that construction is instead of the particular word. What the court has concluded by construing it that way. The court is simply saying when the claim says calculating it means computing. Correct. That's correct. It doesn't mean you ignore calculating. Calculating encompasses computing. It doesn't mean that there's no calculating. It's just that calculating encompasses computing. Your Honor, I have been taught and understand by the decisional authority of this court that the first step in infringement is claim construction. And it was perfectly appropriate if the court had wanted to below to not disturb, to say that the word calculating best describes the word. It need not. But what happened is the parties proposed alternative constructions to that language. What Capital One proposed was computing using a mathematical formula. The court accepted part of it, rejected part of it. Say, listen, this specification is not limited to a mathematical formula. It talks about this calculation, figuring out what the appropriate price, giving a parameter is in other ways than a mathematical. But the court construed calculating to be computing. And for the purpose of then infringement analysis, is that it's always been my understanding that once the court has concluded, as a matter of law, that this is the construction that will be the jury instruction, even though that word is in the claim, we are to use the construction with respect to it. That's how I understand. And so that's the process that I have taken. And using that word compute or calculate, we have demonstrated with respect to our expert how, in the context of this particular invention, how the Card Lab operates, that in response to a user input, where the user selects an account parameter, how an annual price, which is a price for the account, is calculated. The concern that I have before you about the briefing is that, as I understand their arguments, we're not talking about compute. We're not talking about calculate. They are ascribing a meaning to compute a price to generate a price for the first time. That's what they're arguing. They're saying that's what the court meant, and because it's undisputed that the Card Lab computer system is populated with data and information from 155 pre-existing credit cards, there can't be this limitation, this element of the claims cannot be met. And my brief to you, to start out before we get to the evidence and talk about the evidence, is that I think there's a fundamental dispute as to what the claim construction is, ironically. And I'm suggesting that when you apply what the court said and not what they contend that the court meant when it said it, which they want to imbue with this generate for the first instance, that it's clear there's a fact dispute and this issue should have gone to the jury. One of the fundamental concerns that I have about this whole matter is that there has been a mischaracterization from the outset of this case about what this invention is. This invention doesn't talk about the end result. What the court said, and the court below has said, I've looked at this, and in the end, all the Card Lab system is doing is it's picking from, it's directing somebody to one of 55 pre-existing cards. That's been their argument from the beginning. This invention, the novelty of this invention, is for the first time providing transparency on a parameter basis so that a user can input nothing more than a single parameter and know if I do that parameter, what the price of a credit card is going to be having that parameter. Whether or not ultimately it gets to 155 individually existing cards matters not a whit to this particular invention. This invention talks about inputting a parameter, having a computer system tell you with respect to that parameter what a price of that card would be, which is an annual fee which meets the requirements of price under the court's construction. And that's all we're talking about to get to infringement. And this case should have never been, because of that, dismissed because of non-infringement because each element of these claims are met. Let me see if I understand the scope of what you're suggesting for claim construction. Suppose that instead of 155 cards or whatever the number is, Capital One had two cards, one of which was at a zero annual fee and the other is at a $30 annual fee. And you're given the option on the screen when you go onto their website to choose either the zero fee or the $30 fee. Now, of course, the one with the zero fee is going to have a higher APR than the other one. So you decide you want the zero fee and you click that. Does that infringe in your view? No, that does not infringe because the way these claims are drafted is that the price is the output of the computer system. We explained this carefully to the lower court. The price being the annual fee. Okay, so let me change my hypothetical. Suppose you want the 6% annual fee and there are only two cards. 6%, you mean 6% interest rate? Interest rate, I'm sorry, 6% interest rate. And you click on that. And the box says that's a 6% interest rate that goes with the $30 fee. You click on that. Does that infringe? Well, forgive me because if I can change your hypothetical a little bit so I can bring it in the context of this patent is that although the patent contemplates for various account parameters that you have choices, under the hypothetical you gave me, under a parameter of interest rate, you were saying there's only one choice of interest rate. I'm sorry, the other interest rate is 3%. So you have 3%, 6%. No, you've got two cards, one of which is 6%, the other is 12%. At the 12% card, you're going to end up with a zero annual fee. With the 6% card, you've got a $30 fee. If it's invisible to the user in terms of that it's only two cards, we're just talking about a card lab type system where you go on the system and the thing you want to look up is the parameter that you want to select as interest rate, your hypothetical. You're given two choices, 3% or 6%. I choose a 3%, and then what happens is there are annual fees. If I put 3%, one of the annual fees grays out because the annual fee for the lower interest rate is presumably going to have a lower annual fee. So the higher, under this, I'm using your hypothetical. Lower interest rate, higher annual fee. Okay, okay. But what happens is where you are provided, you the customer, are provided the information that if I select this parameter in your hypothetical, one of those two interest rates, then it will cost me X. In other words, of the two possible annual rates, annual fees, it's one and not the other. That is practicing this invention. Did I answer your question? So the difference, am I right, is the difference is whether the annual fee is written on the box? No, the difference is, is there an output provided by this computer system that informs the consumer based upon his selection of an account parameter what a credit account will cost? So if you have two boxes, one of which says 6% $30, 12% $0, and you are given the choice of clicking on one or the other, that infringes. So long as by selecting one, it indicates which of the other is available and which is not. Because that's indicating the price. You select one. Well, you select one or the other, but there's two events that are going on. There's the selection of an account parameter by the user, and there's a calculation of the price by the software. And what is happening is that when you select one of those two, the computer, through any number of different ways it could be programmed, determines which of those two available prices it's going to charge for that which you select. But it's already in the box. We already know what it is. It's $30 for the 6%. So the person who's using it doesn't know what it is. No, it's written there. It says $30. No, no. Under the hypothetical, both are potentially available under the Card Lab system, but when the user selects one of the interest rates, no longer are those both available. One grays out to indicate the one that remains is the cost of the parameter-related credit card that you chose. But where in Judge Bryson's hypothetical is there a calculating step? A calculating step is a—not that this is a method claim, but— Well, I guess there are method and there are apparatus claims that are asserted in this case, but when you're talking about calculating, computers calculate in any number of different ways. I mean, we can calculate, for example—let's use an example of 6 times 9. Suppose you and I are building a computer and we wanted to calculate 6 times 9. We can load the software in such a way that it adds the numeral 6 nine times. The other thing we could do is that we could create a grid like we all did in third grade, a multiplication table with the integers 1 to 12 on the top and down, populated with that, and it could go to this lookup table and go to 6 here and 9 here, and where does it show? It's 54. And those are alternative different ways that computers calculate. In one case, there has been mathematical analysis. In another, it's been a lookup table. In both circumstances, given the court's construction, the system is calculating, computing that price. Well, if I—I guess this is a variation on Judge Bryson's hypothetical. If I go into Amazon, I'm shopping for a camera, and I look up camera, and it's got six choices of different cameras at different prices, and I pick the first one because that's the one I like, then that is—is there—is that calculating a price? Is there any calculation of a price there when I simply pick the camera that has a price associated with it? Well, you know, I'm—I know you're aware of this, but this patently speaks to credit card. I'm aware of that. I'm just teasing out this language here, trying to get a sense of what it means. I mean, with respect to—in your hypothetical, it's—you're just finding about—you're talking about a correspondence with respect to its— yeah, you just pick a camera that has a price associated with it. Now, somebody had to calculate that price, I guess, based on cost, profit, who knows? But it's presented as simply data points in a table, if you will. On Amazon, you just—this camera costs this much. There's no calculating there in what would normally be considered a calculating step, correct? If you're just looking up a price. But I do believe, Your Honor, we are dealing with the broader term, even though calculate is in the—in the claim. We're dealing with the broader word that's now the construction, compute, which both sides, you know, at this point in time are not disputing. So you would say that Judge Lynn's example, that that would be computing a price? Correct. Okay. Let's hear from the other side. We will save you some rebuttal time, Mr. Dorman. Mr. Barquist. Thank you, Your Honor. May it please the Court. The summary judgment below was correctly granted by Judge Anderson. There is no dispute that the Card Lab tool was a tool to select among 155 pre-designed credit cards that had sets of terms. None of those cards could be changed or modified in any way. They were all input before Card Lab had anything to do with them. And no matter what a customer using Card Lab could do, the same 155 cards existed at the end of the process. So there was no change, no calculation, no—in Mr. Dorman's words at the district court—no recomputation of a price. The construction below was consistent throughout. Judge Anderson, in deciding that—in choosing the word compute to use for calculate a price, to say compute a price, he explicitly rejected Walker's proposal that calculation meant ascertaining the price. And I think Walker is willfully blind of that statement by Judge Anderson and its arguments to this Court this morning. In addition, Judge Anderson, in his markment order, recognized that the program of the invention had to generate a price. So those two concepts were in the markment order from the very beginning. And Judge Anderson chose the word computing to try to express those. On summary judgment, the plaintiff came in and said, well, computing is much broader than that, and ignored those limitations. But Judge Anderson said no, that computing was not broad enough, is not broader than calculate, although we heard this morning that it arguably is, but that it's not broader than calculate, and that it does not include looking up predetermined accounts in a database. On reconsideration, the plaintiff came back one more time and, again, tried to argue that computing was broader than what the district court intended it to be. And, again, the district court said no, computing is not broad enough. And, moreover, the court said that even if the annual fee is a price, it is predetermined, it's not calculated. And even if the set operations that are talked about by Dr. Korf, even if those are computations, there is no calculation of the price. And I think that's an important point. We have to be careful that we're not led into error by kind of deconstructing the calculate a price limitation. It's not simply calculating or computing, and it's not simply price, it's calculating a price or computing a price. And what the court below said that even if, they didn't necessarily agree, but even if what Walker says is computing is computing, and even if an annual fee is a price, which the judge didn't necessarily accept, it's not computing the price. And that's exactly what, if you look at what Dr. Korf, their expert, really says, what he says is that CAR Lab, all CAR Lab does is that it computes the set of accounts that have the predetermined or the requested parameters. He jumps to the conclusion, he offers the conclusory view that that's calculating a price, but all he really says when he's talking about the software is that it goes through, it looks at the parameters, to see if the parameters that are chosen are in a particular card, and it creates an array of cards that have those parameters. Now one thing that's confusing me a little bit, is there some sort of a temporal issue here? I think you'll agree with me that even in the CAR Lab array of choices, there was at some time a calculation. Well, what happened is the same thing that lenders and credit card companies have been doing for decades, if not centuries, is determining what collection of terms they're going to offer to lend money on. And so that was done by Capital One's credit analysts long before CAR Lab came into operation. They created 155 cards that they believed, each one had a slightly different set of terms, and they believed each one would be hopefully profitable to the company. But each one was calculated at some time. Certainly the package of parameters was put together, that's true. But CAR Lab is the accused product, and CAR Lab did not calculate any of those prices. All CAR Lab did, even under Dr. Korf's analysis of the software, is identify which card or cards had one or more of the requested parameters. And indeed that's what their other expert, Professor Mann, says. That CAR Lab, all it was, was a means to identify cards that have the selected parameters. It's a card selection tool, it's not a calculation tool. So what I think Walker is asking the court to endorse here would be a trial where the two parties are arguing to the jury what the court's construction is. I think it's disingenuous to suggest that there's a common understanding of what calculate or compute means. Clearly there's a difference of view there. Judge Anderson said compute is not broad enough to reach simply looking up predetermined prices. They say it is. And so they want a trial where the jury is going to be deciding what the scope of the claims are rather than the court. And that would clearly violate remarkment. It would usurp the district court's authority. Since the debate between the two of you really focuses on how to interpret the claim construction and whether in particular the district court viewed the term computing more narrowly than Mr. Dorman suggests, where in the district court's summary judgment decision would you point us to as the place in which the district court most clearly laid out his narrower construction of the term computing, narrower than at least the plaintiffs assert? Well, I think, Your Honor, the place to look is actually in the Markman order itself. And in the Markman order at A40, Appendix 40, that's where the court rejected the ascertaining that had been proposed by Walker. And on the next page, A41, is where the court explained that the program of the invention would generate a price. So that's where those two concepts came into play, right in the Markman order. And again, I think what Judge Anderson tried to do was he chose the word compute to capture what he explained in the Markman order itself. He was trying to define the scope of the calculating of price limitation. And so then at summary judgment, I mean, I don't think he didn't explicitly try to modify or... No, he certainly didn't do it explicitly. The question is, did he refine in application, let's say, what he meant by computing? Because he does say in the Markman that the use of the word computing is consistent with the term calculating in the Walker patents. So that's a starting point. The question is, where does he end up? Well, again, I think he ends up in finding that Card Lab, which did not have any change in the price, and simply looking up the predetermined cards that have one or more of the selected parameters, he was very clear that that was not reached by his understanding of the word computing. And I think if you look at, Your Honor, I think that the judges, the district court's conclusions are captured at pages 8, 2027 through 2029. That's the point in which he says the price for each of these cards was not calculated by Card Lab. That's the top of 2027? Yes. The price, as defined by the court, was established prior to the operation? That's exactly right. That's what you're looking for. Right. And then further down on the same page, the end result of using the Card Lab system was the selection of a predesigned card using various predetermined account parameters. It was merely selecting a predesigned credit card with certain predetermined account parameters. And there's no dispute about those facts. I mean, there's arguments about language, semantics, but there's no dispute that that's how Card Lab actually worked. And so I think the court made it very clear what the scope of his ruling was. And given that there's no dispute about those facts, I think to send this case back to the district court would mean we'd be, again, facing a trial where the parties are arguing to the jury what the scope of the claim is, what the meaning of the construction is, and that would be improper. And again, in emphasizing that there's no dispute about the facts and to the extent there's any dispute, it's really one of semantics. I mean, look at the factual findings that Walker attacks in their brief. They say the judge found that Card Lab was a way to select from a group of predesigned credit cards. That's exactly right. Professor Mann said it's a process for identifying responsive accounts. Professor Korf says Card Lab computes the set of cards that include the chosen parameters. Exactly what Judge Anderson said. They criticized the district court for saying that Card Lab was a filtering process or a process of elimination. Again, that's exactly the words that they and their experts used. In their infringement contentions, they described Card Lab as filtering, and that's at page A511. Again, Professor Korf talked about Card Lab creating this array of products that have the selected parameters and thereby eliminating those cards that don't have the selected parameters. It's the same thing that Judge Anderson was talking about, a process of elimination. Indeed, in Undisputed Fact No. 6, which Walker did not dispute, the Card Lab software is described as narrowing the list of available terms. Again, another way to express what Judge Anderson said, it's a process of elimination. So there really is no dispute about how Card Lab worked, and they're trying to use semantics to suggest that there is. Lastly, I would point out that there's an alternative ground on which this case could be affirmed, which is that the annual fee of a credit card is not the price of the patent claims. The first point there, Your Honors, is that in the patent itself, the patentees distinguish what they call so-called standard accounts, which of course would have an annual fee along with other standard credit terms, from the fees of the invention, and that's at the bottom of Column 8, right at the top of Column 9 of the patent. They make that distinction. They say standard accounts do not have fees, and that the fee is the fee, the calculated price of the invention. The other reason why annual fee cannot be a price is Walker's infringement theory itself. Walker is now saying that if the annual fee is selected by the customer as they go through the Card Lab software, then the account, the annual fee is an account parameter, not the price, and the price is zero. They also say that if the annual fee is not picked, if the customer walks through the Card Lab software in a different order, then the annual fee is the price, and the price is not zero. So even if you have the same account, say you get to the same account that has an annual fee of $39 and an interest rate of 10% and airline miles as a bonus, they say that in one situation, that $39 fee is the price, and in another situation, it's not the price, but it's an account parameter. I mean, their arguments just don't make sense. And so to suggest that the annual fee is price is simply wrong. Let me ask you a question, going back to the first issue, if you would. One of the parameters, I guess, is creditworthiness. I think that's used by Card Lab. Isn't that right? It's not so much as a parameter. It's the first choice in the system, which does then narrow the number of cards or which of the 150 plus cards are going to be offered. It's one of the elements that you are required to consider. Right. It's the first step in the sorting or filtering process. Right. Suppose that, I mean, that would produce, the lower your creditworthiness, presumably, the less attractive the features that you're likely to have offered to you. Correct? Makes sense. Yes. Right. Suppose that what you've got is just two parameters. One is creditworthiness and two is the price of the card. Everything else is out. And so everything else is standard with the card. And what you enter in is your credit score, 714 or whatever. And out comes a price, which is $29 for 714. Now, that's been loaded into the system before. It's loaded in a price for every gradation of credit score. But isn't that, in effect, calculating a price? Well, I would say no, Your Honor, because if it's all loaded in— It's putting a lookup table, as Mr. Dorman said. Right. As opposed to simply being the product of actually running what we would think of more as a conventional calculation. But it's a lookup table. Well, I think a lookup table is not calculating a price. It's simply looking up a predetermined amount. And so in your hypothetical, you could have it all predesigned such that if you have a 714, the annual fee or the price of the account is going to be a certain number. And so there's two ways to do it. But this patent requires calculating the price, not simply looking up the price. So if you do it by some calculation on the fly, I suppose there might be an issue. But if you're simply looking it up, which is all CARLAB did, then I think it's not computing a price. Okay. Any more questions? Any more questions? Thank you, Mr. Harris. Thank you, Your Honor. Mr. Dorman, three minutes. Thank you, Your Honor. I've got three quick points. Judge Bryson, what the question you just asked is the fundamental question here, because calculating, computing, what computers do is they can do things with lookup tables. There's a fundamental point. If I leave today and have one thing in your mind, it's this. There is no predetermined price. And let me tell you why that's true. It's true that the elements of 155 cards are preloaded. But until consumer A comes into and starts using the CARLAB system, there is no predetermination as to what that price, that person is going to be charged for a credit account. What is true is that the universe of possibilities is loaded in the lookup table. But when this person comes in and says, I choose this parameter, and then what occurs is through the computer activities of CARLAB, going through these lookup tables, et cetera, an identification occurs unique to that particular person's request as to what the output is. And so that computing and calculation meets the court's construction. Now, I want to give you a quick— But that would apply to Judge Schoen's cameras as well, wouldn't it? He's got four cameras to choose from, and you don't know which one he's going to end up with. Let me tell you why that analogy doesn't work here. It's because if you look at this specification, when there's a lexicographer description of what calculating a price is, and it's an exchange of value, there's a recognition when we're talking about credit card accounts that parameters of interest rate, term, minimum monthly, et cetera, that if you get one, there's an effect on others. The camera example is it's not like you can have a lens. There's not an exchange of value that occurs. So I mean, I don't think that's a particular— I understood the question about if you're simply identifying a price that corresponds with a camera, that's not what's going on here. There's a recognition that there can be any number of parameters chosen, and with each parameter, it has an effect on other elements of it. Well, four different cameras with four different features. So there's a selection of, well, I want this one to have a zoom, or I want this one to have autofocus, or I want this, that, or the other. So what happens is, but those other features aren't affected, don't transmogrify depending upon your other selection. They're static. What happens in a credit card context, if I select a higher interest rate, for example, I may have to have a higher minimum or a lower minimum or something, and it's this exchange of value that doesn't exist in the camera circumstance. But let me, with my short amount of time left, the other thing I—two points. One is, Dr. Korf, we first presented his declaration, his expert testimony, assuming the court was going to grant their request, which was computing using a mathematical formula. He demonstrated, and what's in the record and what supports a reversal here, is using set intersection and set union theory, he demonstrated how the activities is computing using mathematical formulas, and we're not asking the—we're not going to be arguing the meaning of claim construction at the trial. We're going to be using the judge's jury instruction. Now, the final point was the alternative ground he made, and I just want to make this quickly, is that the court-construed price means a fee or credit that may be zero for modifying or entering into a credit account. You need look no farther than the record at 1510. The car-led grocery entry for annual fee is a fee charged annually by the lender for the right to use the car. It's the price of use, much like if I lease a house, the price of the use is my lease payment. That's what the annual fee is. So there's no basis—I mean, given those facts, given that fact alone, a reasonable jury could find that that element is met when annual fee is the output. Again, if you pick an annual fee first as a parameter, in the context of a parameter, there's no infringement. It has to be the output, and I've explained that to the lower court. Thank you so much. Thank you, Mr. Berman and Mr. Barquis. The case is taken under submission.